**YELLOW CAB COMPANY, Plaintiff,**

v.

**CITY OF CHICAGO and Caroline O. Shoenberger, Commissioner of Consumer Services, Defendants.**

No. 95 C 3383.

United States District Court,
N.D. Illinois,
Eastern Division.

March 11, 1996.

1134

Wayne R. Hannah, Jr., Roderick Alan Palmore, Faith Holloway Spencer, Sonnenschein, Nath & Rosenthal, Chicago, IL, for plaintiff.

Anita K. Modak–Truran, Patrick Walter Johnson, City of Chicago Law Department, Corporation Counsel, Chicago, IL, Weston Wayne Hanscom, City of Chicago Law Department, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On June 7, 1995, plaintiff, Yellow Cab Company ("Yellow Cab"), filed its complaint against defendants, City of Chicago and Caroline O. Shoenberger, the Commissioner of Consumer Services (the "Commissioner"). Yellow Cab owns taxicabs that it leases to drivers who pay Yellow Cab under the leases and keep the amounts earned from driving the taxicabs.

Yellow Cab's complaint alleges that on December 15, 1993, the Chicago City Council passed an ordinance, Chicago Municipal Code ("Code"), chapter 9–112–145, instructing the Commissioner to set maximum rates that taxicab owners may charge to lease their taxicabs ("Ordinance"). The Ordinance also provided that through March 15, 1994, taxicab owners could not charge a rate to lease their taxicabs higher than the rate in effect on December 15, 1993 and could increase rates by 2.8 percent during that time period. On March 15, 1994, the Commissioner promulgated final rules and regulations establishing maximum allowable lease rates for taxicabs ("Lease Rate Regulations"). In set-

ting the rates, the Commissioner assumed a 14 percent rate of return for the taxicab industry.

The Lease Rate Regulations provide that a taxicab owner may seek permission to charge a lease rate higher than the maximum lease rates by submitting an appeal to the Department of Consumer Services. Yellow Cab filed its appeal on May 2, 1994 along with its Financial Reporting Package and Lease Rate Survey Form, as required by the rules and regulations. An administrative hearing on Yellow Cab's appeal was held during August, 1995; the hearing officer issued a report and recommendation on October 24, 1995, finding that the maximum rates "are sufficient to pay Yellow Cab its reasonable operating costs and afford it a just and reasonable return on its investment;" and on October 27, 1995, the Commissioner adopted the hearing officer's report and recommendation.

Yellow Cab claims that the defendants' actions violate its constitutional rights to procedural due process, to substantive due process, to equal protection, and amount to an unlawful taking without just compensation. The defendants have filed a motion to dismiss. For the reasons stated below, the motion is granted in part and denied in part.

### Standard of Review

To survive a motion to dismiss, a plaintiff must allege sufficient facts to outline a cause of action. *Davis v. Frapolly,* 747 F.Supp. 451, 452 (N.D.Ill.1989). In deciding a motion to dismiss, a court is to assume the truth of all facts alleged in the complaint and construe the allegations liberally, viewing them in the light most favorable to the plaintiff. *Wilson v. Formigoni,* 42 F.3d 1060, 1062 (7th Cir.1994); *McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir.1992). I need not, however, accept as true conclusory legal allegations. *Vaden v. Village of Maywood, Illinois,* 809 F.2d 361, 363 (7th Cir.1987), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). A defendant's motion to dismiss is to be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir.1993) (quoting

*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### Counts I and II: Procedural Due Process

In its complaint, Yellow Cab alleges that its right to procedural due process has been violated because "the Commissioner has failed and refused to act on Yellow Cab's application for permission to charge rates in excess of the maximum lease rates" and "neither the Ordinance nor the Lease Rate Regulations prescribe a time period within which the Commissioner must act on petitions to charge lease rates in excess of the maximum rates set by the Commissioner." Complaint ¶¶ 59–61, 61, pp. 12–13, 14–15. The defendants argue that Yellow Cab's procedural due process claim is moot.

Under Article III of the U.S. Constitution, a federal court has jurisdiction only over cases and controversies. *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir.1994). A case exists when both litigants have a personal stake in the case from the start which continues until its conclusion. *Id.* A claim is moot, and dismissal is required, "when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the [claim]." *Id.* (citations omitted).

Yellow Cab's demand that the Commissioner act on its petition to charge lease rates exceeding the maximum allowable rates in the Lease Rate Regulations has been satisfied. Since the time that Yellow Cab filed its complaint, the Commissioner designated a hearing officer who conducted an administrative hearing on Yellow Cab's petition and issued a report and recommendation, which the Commissioner adopted as her final decision. Thus, Yellow Cab no longer has a stake in its procedural due process claim. *See id.* (holding that once defendant offers to satisfy plaintiff's demand, there is not a dispute to litigate because plaintiff has no remaining stake). Yellow Cab's claim is moot.

However, the fact that the defendants voluntarily conducted the administrative hearing on Yellow Cab's appeal does not in itself render Yellow Cab's procedural due process claim non-justiciable. *See City of*

*Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289–90, 102 S.Ct. 1070, 1074–75, 71 L.Ed.2d 152 (1982) (stating that city's repeal of ordinance does not necessarily terminate a case or controversy, as repeal "would not preclude it from reenacting precisely the same provision," and, in fact, the city had declared just such an intention). As Yellow Cab contends, dismissal due to mootness is not warranted if Yellow Cab shows that its claim, although no longer live, is "capable of repetition, yet evading review." *See Holstein v. City of Chicago, supra*, 29 F.3d at 1147. To make this demonstration, Yellow Cab must prove that "[it] will again be subject to the alleged illegality." *See id.* (citations omitted).

> [T]here must be a 'reasonable expectation' or a 'demonstrable probability' that the same controversy will recur involving the same parties.

*Id.* at 1148 (citation omitted). A "mere physical or theoretical possibility" of such a recurrence is not sufficient. *Id.* Although Yellow Cab may in the future appeal maximum rates set forth in the Lease Rate Regulations, it would be no more than conjecture to find that Yellow Cab will again suffer the delay about which it complains here. Therefore, Yellow Cab cannot "do more than merely speculate that [it] again will experience injury as a result of a particular practice." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir.1991). Such speculation is not the equivalent of "reasonable expectation" or "demonstrable probability," and therefore, Yellow Cab cannot save its procedural due process claim under the "capable of repetition yet evading review" principle. *See id.*, 933 F.2d 562, 565 (7th Cir.1991) (holding that city's voluntary cessation of its allegedly illegal actions did not necessarily moot the case, but the case was moot because plaintiffs did not have a reasonable expectation that city would again engage in the activity about which they complained).

▮ Yellow Cab additionally argues that I should refrain from dismissing its procedural due process claim because the hearing on its appeal was not conducted "at a meaningful time and in a meaningful manner." Yellow Cab relies on *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), and *Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975), as grounds for its argument. In *Armstrong*, the petitioner claimed that his due process rights were violated because he was not notified of proceedings in which his former wife's husband sought to become the legal father of the petitioner's daughter. *Id.* at 549–50, 85 S.Ct. at 1190–91. The petitioner first appeared in court after a judge had already entered an adoption decree based on another judge's finding of non-support. *Id.* at 551, 85 S.Ct. at 1191. Consequently, the petitioner was required to shoulder "the burden of affirmatively showing that he had contributed to the support of his daughter to the limit of his financial ability over the period involved." *Id.* Following the petitioner's appearance, the court affirmed the adoption decree. *Id.* at 549, 85 S.Ct. at 1190. Had the petitioner been given timely notice, he would not have had to carry the burden, and therefore, may have successfully resisted the attempt to adopt his daughter. *Id.* Thus, the petitioner's hearing was not "at a meaningful time and in a meaningful manner."

*Fusari* was a class action challenging the procedures Connecticut followed to pay unemployment compensation, which involved examiners determining claimants' continuing eligibility for payments. *Id.* at 380–81, 95 S.Ct. at 535–36. Claimants whom examiners decided were ineligible for benefits had the right to appeal, but benefits generally were withheld pending resolution of the appeal. *Id.* at 381, 95 S.Ct. at 536. The Supreme Court stated:

> In this context, the possible length of wrongful deprivation of unemployment benefits is an important factor in assessing the impact of official action on the private interests ... Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process.

*Id.* at 389, 95 S.Ct. at 540.

*Armstrong* and *Fusari* are distinguishable from this case. Yellow Cab's appeal is com-

plete, and the Commissioner's final decision rejects Yellow Cab's request to charge higher rates than prescribed by the Lease Rate Regulations. Thus, Yellow Cab would not have gained anything had the hearing on its appeal been conducted more promptly.

Yellow Cab alleges that while its appeal was pending, its "lease rates [were] capped at levels below Yellow Cab's existing rates when the Lease Rate Regulations were promulgated...." Complaint, ¶ 51, p. 11. Yellow Cab does not allege that the levels at which Yellow Cab's lease rates were capped were actually lower than the rates permitted by the Lease Rate Regulations. In fact, Yellow Cab's memorandum supporting its motion for a temporary restraining order and preliminary injunction, p. 3, indicates that Yellow Cab's lease rates during the pendency of its appeal were higher than the maximum lease rates. The defendants did not require Yellow Cab to institute the maximum lease rates established by the Lease Rate Regulations while its appeal was pending. The defendants demanded that Yellow Cab do so only on January 28, 1996, which was after the administrative proceedings were completed. Thus, in light of the outcome of the appeal, the defendants' delay in conducting the administrative hearing actually benefitted Yellow Cab.

Accordingly, the procedural due process claims in Counts I and II of Yellow Cab's complaint are dismissed.

### Counts II and III: Substantive Due Process

▇▇▇▇ Yellow Cab alleges that the defendants have violated its rights under the doctrine of substantive due process.

The fact that [substantive due process] is a doctrine owing its existence to constitutional structure rather than a clear grant of power to the judiciary has led the Supreme Court to be cautious in its use.

*National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir.1995), cert. denied, —— U.S. ——, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995) (citations omitted). The protection afforded by the doctrine of substantive due process only encompasses laws affecting "fundamental rights." *Id.* As a corporation, Yellow Cab does not have fundamental rights. *Id.* Moreover, "[t]he only interest at stake is the interest in obtaining the maximum return on investment," which is not a fundamental right. *Id.* at 1130. It is the takings clause of the Constitution, "which does not forbid regulation but simply requires payment," and not the substantive due process doctrine which gives businesses substantive protections. *Id.* Accordingly, Yellow Cab's substantive due process claims in Counts II and III of the complaint are dismissed.[1]

### Counts III and IV: Equal Protection

▇▇▇▇ Yellow Cab claims that the defendants have trampled its constitutional right to equal protection. As the parties agree, whether the Lease Rate Regulations violate the equal protection clause depends on whether "the classification challenged [is] rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976).

[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'

*National Paint & Coatings Ass'n v. City of Chicago*, supra, 45 F.3d at 1127 (quoting *Heller v. Doe*, 509 U.S. 312, 318–19, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993)); see also *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511

---

1. The cases on which Yellow Cab relies, *Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987) and *Independent Coin Payphone Ass'n v. City of Chicago*, 863 F.Supp. 744, 752 (N.D.Ill. 1994), are not instructive. *Burrell* involved individual instead of corporate plaintiffs who possessed fundamental rights and therefore potentially could state a substantive due process claim. The court in *Independent Coin Payphone* denied the defendant's motion to dismiss the plaintiffs' substantive due process claim on the basis that there were factual issues which could not be resolved at that stage of the proceedings. To the extent that the case found that a corporate entity may possess fundamental rights, the Seventh Circuit's subsequent decision in *National Paint & Coatings Association* is controlling.

(1976) (in applying the rational basis test, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations"). To successfully attack the economic regulation here, Yellow Cab is obligated to "negative every conceivable basis which might support" the rule. *National Paint & Coatings Ass'n v. City of Chicago, supra,* 45 F.3d at 1127 (citing *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973)).

■ The defendants advance a rational argument, or "conceivable basis," for their law. *See id.* Section 9–112–145(2) of the Code states that one of the purposes of establishing maximum rates is to "provide for safe and adequate taxicab service within the city by providing lessees with an opportunity to earn a fair and reasonable income." Thus, the defendants argue that setting maximum lease rates protects cab drivers by allowing them to avoid working long hours to pay lease rates as well as earn a living and also protects consumers from overworked drivers posing a road safety hazard.

Yellow Cab does not negate the reasons set forth by the defendants. Instead, it argues that the lease rate regulations are discriminatory because they are aimed at taxicab lessors and not lessors of other vehicles or types of property. Pl.'s Resp.Brf., p. 15; Complaint, ¶ 7, p. 16. The defendants are not obligated to address an entire problem at once; they may rationally decide to ameliorate the perceived problem involving taxicab leases and deal with other leases later. The Supreme Court, in holding that a law allowing pushcart food vendors to continue to operate but eliminating newer vendors was not constitutionally infirm under the equal protection clause, stated:

[W]e are guided by the familiar principles that a 'statute is not invalid under the Constitution because it might have gone

farther than it did,' . . . that a legislature need not 'strike at all evils at the same time,' . . . and that 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind'. . . .

*New Orleans v. Dukes, supra,* 427 U.S. at 305, 96 S.Ct. at 2517 (quoting *Katzenbach v. Morgan,* 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966)) (internal citations omitted). Under this tenet, Yellow Cab's argument lacks merit.

Yellow Cab also argues that the lease rate regulations are discriminatory as applied to it because due to "its size, it incurs substantial costs not incurred by smaller taxicab companies." Pl.'s Resp. Brf., p. 16; Complaint, ¶¶ 84–85, pp. 18–19. However,

[n]o constitutional objection arises from the imposition of maximum prices merely because 'high cost operators may be more seriously affected . . . than others. . . .'

*Permian Basin Area Rate Cases,* 390 U.S. 747, 769, 88 S.Ct. 1344, 1361, 20 L.Ed.2d 312 (1968) (quoting *Bowles v. Willingham,* 321 U.S. 503, 518, 64 S.Ct. 641, 649, 88 L.Ed. 892 (1944)).[2] Accordingly, Count IV of the complaint and the equal protection claims in Count III of the complaint are dismissed.

### Count V: Taking

■ Count V of the complaint alleges that the Lease Rate Regulations "take" Yellow Cab's property. Yellow Cab does not contend that the Code's instruction to the Commissioner to establish maximum lease rates for the purposes of (1) "enabl[ing] the lessor to receive adequate revenues to pay the lessor's reasonable expenses and receive a just and reasonable rate of return on the lessor's investment;" and (2) "provid[ing] for safe and adequate taxicab service within the city by providing lessees with an opportunity to earn a fair and reasonable income" are not a legitimate exercise of the defendants' police

---

**2.** *Scadron v. City of Des Plaines, supra,* 734 F.Supp. 1437, 1455–56 (N.D.Ill.1990), on which Yellow Cab relies, involved a claim that Des Plaines intentionally treated the plaintiff company differently from larger companies. Although Yellow Cab's complaint in this case alleges intentional conduct as well as conduct having an adverse effect on it, Yellow Cab does not allege that "the decision-maker singled out [Yellow Cab] for disparate treatment and selected [its] course of action for the purpose of causing its adverse effects on [Yellow Cab]." *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982); *Scadron, supra,* 734 F.Supp. at 1456. Without such allegations, it cannot state a claim.

powers. Code, Ch. 9–112–145. Yellow Cab does claim that the Ordinance and Lease Rate Regulations "result in confiscatory rates for Yellow Cab and therefore deny Yellow Cab the right to earn a fair rate of return on its taxicab operations in the City of Chicago;" "have substantially deprived Yellow Cab of an economically viable use of its property without compensation;" and "have resulted in the taking of Yellow Cab's property for public use without just compensation." Complaint, ¶¶ 88, 89, 90, p. 20. The defendants argue that the complaint fails to allege that the rates set by the Lease Rate Regulations were so low as to be confiscatory.

Both parties rely on *Duquesne Light Co. v. Barasch,* 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989), in which the Supreme Court noted that precedent establishes that the U.S. Constitution "protects utilities from being limited to a charge for their property serving the public which is so 'unjust' as to be confiscatory." *Id.* at 307, 109 S.Ct. at 615 (citing *Covington & Lexington Turnpike Road Co. v. Sandford,* 164 U.S. 578, 597, 17 S.Ct. 198, 205, 41 L.Ed. 560 (1896) ("[a] rate is too low if it is 'so unjust as to destroy the value of [the] property for all the purposes for which it was acquired,' and in so doing 'practically deprive[s] the owner of property without due process of law' ")) (other citations omitted). " 'If the total effect of the rate order cannot be said to be unreasonable, judicial inquiry ... is at an end.' " *Id.* at 310, 109 S.Ct. at 617 (quoting *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 602, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944)).

Whether a particular rate is "unjust" or "unreasonable" will depend to some extent on what is a fair rate of return given the risks under a particular rate-setting system, and on the amount of capital upon which the investors are entitled to earn that return.

*Id.*[3]

 Yellow Cab alleges in its complaint that the Ordinance and Lease Rate Regulations establish a rate system for leasing taxicabs which, as applied to it, results in confiscatory rates. To support its conclusion, Yellow Cab alleges that the maximum lease rates set forth in the Lease Rate Regulations do not permit Yellow Cab to charge enough under its leases to pay its expenses and earn a reasonable rate of return. Complaint, ¶¶ 52, 87, pp. 11, 20. Yellow Cab asserts that the Commissioner established the maximum lease rates without considering Yellow Cab's costs, such as

actual vehicle, equipment and license costs, asset depreciation, the costs of insurance, operation and maintenance, uninsured repairs, wages and salaries, garage storage, taxes, fees, radio dispatching and administration, and other periodic expenses....

Complaint, ¶ 41, p. 9. Deciding whether or not the Lease Rate Regulations actually inflict confiscatory rates upon Yellow Cab would require investigation into the facts underlying the complaint's allegations—an inappropriate task in resolving a motion to dismiss. Yellow Cab sufficiently claims that the Ordinance and Lease Rate Regulations unlawfully "take" its property, and therefore, the motion to dismiss Count V is denied.[4]

**3.** Defendants argue that in order to state a prima facie takings claim, Yellow Cab "must allege that they have been divested of all of their rights to use their property as a whole." *See National Bank of Austin ATUT 5081 v. City of Chicago,* No. 94 C 3004, 1994 WL 319300, *2 (N.D.Ill. June 23, 1994). That case addressed whether the "mere enactment" of a statute constitutes a taking. In this case, however, the defendants required Yellow Cab to roll back its lease rates on January 28, 1996 to comply with the Lease Rate Regulations, which Yellow Cab has done. Consequently, this case now presents an "as-applied" takings challenge.

**4.** The defendants rely on cases invoking the principle that "where an owner possesses a full 'bun-

dle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard,* 444 U.S. 51, 65–66, 100 S.Ct. 318, 326–27, 62 L.Ed.2d 210 (1979); *Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. 470, 497–99, 107 S.Ct. 1232, 1248–49, 94 L.Ed.2d 472 (1987). These cases are not instructive. *Andrus* addressed a law forbidding one means of disposing of bird artifacts while *Keystone* involved a law prohibiting coal companies from mining all their coal. Yellow Cab's allegations that the rates set by the Lease Rate Regulations are confiscatory is not the equivalent of a claim that the rates merely destroy "one strand" of its entire "bundle" of property rights. Rather, Yellow Cab essentially alleges that the rates de-

### Conclusion

For the foregoing reasons, the City of Chicago and Caroline O. Shoenberger's motion to dismiss Yellow Cab's complaint is granted in part and denied in part.

stroy its "bundle" of rights. Moreover, in *Andrus* the Supreme Court warned against deciding cases brought under the takings clause using "formulas and factors:" "Resolution of each case ... ultimately calls as much for the exercise of judgment as for the application of logic." *Andrus v. Allard, supra*, 444 U.S. at 65, 100 S.Ct. at 327.

The defendants also argue that there can be no taking in this case because Yellow Cab can avoid the effect of the Lease Rate Regulations as it does not have to lease taxicabs to drivers; rather, it can employ drivers. *See e.g., Bowles v. Willingham*, 321 U.S. 503, 517, 64 S.Ct. 641, 648, 88 L.Ed. 892 (1943). The economic effect on Yellow Cab of such a course of action may be relevant. *See Tenoco Oil Company, Inc. v. Department of Consumer Affairs*, 876 F.2d 1013, 1027 n. 21 (1st Cir.1989). At any rate, whether or not Yellow Cab can indeed hire drivers is not an appropriate inquiry on a motion to dismiss.

Finally, the defendants contend that in deciding the motion to dismiss I should take into account the Commissioner's final decision. I may take judicial notice of certain matters of public record without converting a FED.R.CIV.P. 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994). Although the parties do not discuss the standard of review that I should apply to the administrative decision, the defendants contend that "[t]he findings of the final administrative decision fall within the zone of reasonableness as a matter of law." Defs.' Reply Brf., p. 15 n. 9. Assuming that I am to decide whether the administrative decision is "within the zone of reasonableness," I cannot do so on a motion to dismiss. Accordingly, I will not consider the Commissioner's final decision in resolving the defendants' motion.