**YELLOW CAB COMPANY, Plaintiff,**

v.

**CITY OF CHICAGO and Caroline O. Shoenberger, Commissioner of Consumer Services, Defendants.**

No. 95 C 3383.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 10, 1996.

Wayne R. Hannah, Jr., Roderick Alan Palmore, Faith Holloway Spencer, Sonnenschein, Nath & Rosenthal, Chicago, IL, for plaintiff.

Anita K. Modak–Truran, Patrick Walter Johnson, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Weston Wayne Hanscom, City of Chicago Law Department, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On June 7, 1995, plaintiff, Yellow Cab Company ("Yellow Cab"), filed its complaint against defendants, City of Chicago (the "City") and Caroline O. Shoenberger, who is the Commissioner of Consumer Services (the "Commissioner"). Yellow Cab's complaint arises out of the Commissioner's promulgation of final rules and regulations establishing maximum allowable lease rates for taxicabs (the "Lease Rate Regulations"), which permit Yellow Cab a 14 percent rate of return on its investment. Under the Lease Rate Regulations, taxicab owners may seek permission to charge a lease rate higher than the maximum allowable rates by filing an appeal with the Department of Consumer Services ("Department"). Yellow Cab appealed on May 2, 1994. On October 24, 1995, following an administrative hearing, the hearing officer issued a report and recommendation finding that the maximum rates "are sufficient to pay Yellow Cab its reasonable operating costs and afford it a just and reasonable return on its investment"; and, on December 4, 1995, the Commissioner adopted the hearing officer's report and recommendation.

In count V of the complaint, Yellow Cab claims that the rates set by the Lease Rate Regulations are so low as to be confiscatory and therefore violate constitutional standards. Defendants have filed a motion for summary judgment on count V. In the motion, defendants argue that because the hearing officer decided that the Lease Rate Regulations give Yellow Cab a just and reasonable return, Yellow Cab is collaterally estopped from litigating the issues it raises in count V. For the reasons discussed below, defendants' motion is granted.

 I am to give collateral estoppel effect to the judgments of an agency "(1) acting in a judicial capacity, (2) resolving disputed issues of fact properly before it, [and] (3) if the parties have had an opportunity to litigate the issues." *Reed v. AMAX Coal Company,* 971 F.2d 1295, 1300 (7th Cir.1992).

An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law.

**502**

*Id.*[1] Defendants maintain that the Department acted in a judicial capacity in carrying out the hearing. Yellow Cab agrees that five of the seven elements were present. Yellow Cab contends, however, that it was not permitted to perform pretrial discovery, citing only to the Lease Rate Regulations and the notice of the final draft of the Lease Rate Regulations, which do not support its argument. Defendants have submitted the affidavit of one of its attorneys, Weston H. Hanscom. In his affidavit, Mr. Hanscom declares:

> During July 1995, I attended a pre-hearing conference before the hearing officer, at which I recall Wayne Hannah, as counsel for Yellow Cab, taking the position that no depositions or further discovery were necessary, as he considered the proceeding to be relatively straight-forward and simple. Based on those comments and other discussions, it was agreed that no depositions or further discovery would be taken.

Mr. Hanscom's affidavit is uncontradicted. I conclude that Yellow Cab has waived any claim that it was not afforded pretrial discovery.

■ Yellow Cab also argues that the hearing officer did not do a sufficient legal analysis to render the administrative proceeding judicial. I disagree. For the hearing to be considered judicial, the hearing officer only had to make "conclusions of law." The hearing officer's ultimate conclusion was one of law: he determined that pursuant to the Lease Rate Regulations, a preponderance of the evidence established that the maximum lease rates are adequate to pay Yellow Cab a just and reasonable return on its investment. Accordingly, I find that the Department acted in a judicial capacity when it conducted the hearing.

■ Defendants do not necessarily prevail in this litigation, however. The issue here is whether the maximum lease rates give Yellow Cab a just and reasonable rate of return for the purposes of the U.S. Constitution. Not only did the hearing officer and the Commissioner not address the constitutionality of the rates fixed by the Lease Rate Regulations, they were precluded from doing so.

■ The parties agree that in prescribing the maximum rates applicable to the taxicab industry via the Lease Rate Regulations, the Department was acting in a legislative capacity. *See, e.g., Texas Co. v. Chicago & Alton R. Co.,* 117 F.2d 210, 215 (7th Cir.1940), *cert. denied,* 313 U.S. 570, 61 S.Ct. 947, 85 L.Ed. 1528 (1941) (stating that when commission sets "a maximum reasonable rate for the future," it performs a legislative function) (quoting *Arizona Grocery Co. v. Atchison T. & S.F.R. Co.,* 284 U.S. 370, 389, 52 S.Ct. 183, 186, 76 L.Ed. 348 (1932)). Generally, an administrative agency is "without power or expertise to pass upon the constutitionality of administrative or legislative action." *Spiegel, Inc. v. Federal Trade Commission,* 540 F.2d 287, 294 (7th Cir.1976). *See also Alleghany Corporation v. Haase,* 896 F.2d 1046, 1051–52 (7th Cir.1990) (noting that courts commonly hold that administrative agencies lack the power to determine the constitutionality of legislation they enforce), *vacated in part as moot sub nom Dillon, Commissioner, Indiana Department of Insurance v. Alleghany Corp.,* 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991);[2] *Tillett v. Lujan,* 931 F.2d 636, 640 (10th Cir.1991) ("Nor do we generally commit to an administrative agency the power to determine the constitutionality of its regulations [or of legislation]").

■ Nevertheless, a rate passes constitutional muster if it is just and reasonable. As I stated in my Memorandum Opinion and Order of March 12, 1996 (919 F.Supp. 1133, 1140):

> go, 803 F.Supp. 205, 211 (N.D.Ill.1992), aff'd, 29 F.3d 1145, 1148 (7th Cir.1994).

**1.** Thus, contrary to plaintiff's contention, it is not necessary that an agency conduct a hearing pursuant to either the Illinois Administrative Procedure Act or the Illinois Administrative Review Act in order to act in a judicial capacity. Furthermore, a municipal agency can act in a judicial capacity. *See, e.g., Holstein v. City of Chica-*

**2.** "Although mootness led to vacatur [in *Alleghany*], we are convinced that the legal analysis of *Alleghany* remains sound...." *NBD Bank, N.A. v. Bennett,* 67 F.3d 629, 634 (7th Cir.1995).

[T]he U.S. Constitution "protects utilities from being limited to a charge for their property serving the public which is so 'unjust' as to be confiscatory." [*Duquesne Light Co. v. Barasch,* 488 U.S. 299, 307, 109 S.Ct. 609, 615, 102 L.Ed.2d 646 (1989) ] (citing *Covington & Lexington Turnpike Road Co. v. Sandford,* 164 U.S. 578, 597, 17 S.Ct. 198, 205, 41 L.Ed. 560 (1896) ("[a] rate is too low if it is 'so unjust as to destroy the value of [the] property for all the purposes for which it was acquired,' and in so doing 'practically deprive[s] the owner of property without due process of law' ")) (other citations omitted). " 'If the total effect of the rate order cannot be said to be unreasonable, judicial inquiry ... is at an end.' " *Id.* at 310, 109 S.Ct. at 617. (quoting *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 602, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944)).

> Whether a particular rate is "unjust" or "unreasonable" will depend to some extent on what is a fair rate of return given the risks under a particular rate-setting system, and on the amount of capital upon which the investors are entitled to earn that return.

*Id.*

Following careful analysis of the evidence before him, the hearing officer made the following findings. The Commissioner engaged the Grant Thornton firm to develop the lease rate model used to establish the maximum lease rates identified in the Lease Rate Regulations. Based on extensive research and the concept of weighted average cost of capital, which resulted in a 12 percent rate of return assigned to debt and a 20 percent rate of return given to equity, Grant Thornton determined that the maximum lease rates should afford a 14 percent rate of return. The actual rate charged to Yellow Cab's debt was 7.25 percent rather than 12 percent. Consequently, Yellow Cab's "actual weighted average cost of capital was approximately 10.5%, which is lower than the 14% rate or return proposed...." Yellow Cab did not show that the risks of the taxicab industry in Chicago entitled it to a rate of return exceeding 20 percent. Yellow Cab also did not show that the City's methodology does not adequately account for its invested capital, *i.e.,* the value of taxicab medallions, since the City properly used the historical value of the medallions. In addition, Yellow Cab failed to demonstrate that it should be allowed a certain sum per taxicab in operating costs attributable to income taxes; succeeded in showing that the amount spent for workers' compensation insurance should be added back into the model's figure for total insurance cost, but did not show that the amount it spends for excess insurance should be added into that figure; did not show that its interest expense should have been included as an operating cost; and sustained its burden of proving that its management fees be considered an operating expense. The hearing officer concluded that "a preponderance of the evidence establishe[d] that the lease rates in effect, with the inclusion of Yellow Cab's management fees, are sufficient to pay Yellow Cab its reasonable operating costs and afford it a just and reasonable return on its investment."

Under the applicable constitutional standards, the facts as found by the hearing officer entitle defendants to summary judgment. Accordingly, defendants' motion for summary judgment on count V is granted.