**STATE of Iowa, Appellee,**

v.

**Douglas CADOTTE, Appellant.**

No. 94–1824.

Supreme Court of Iowa.

Jan. 17, 1996.

Linda Del Gallo, State Appellate Defender, and Sharon R. Stevens, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, Brent D. Heeren, County Attorney, and Richard Vander Mey, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Douglas Cadotte was convicted of second-degree burglary under Iowa Code sections 713.1 and 713.5 (1993); criminal mischief, Iowa Code sections 716.1 and 716.6 (1993); and interference with official acts, Iowa Code section 719.1(1) (1993). He appealed, complaining that the district court erroneously overruled his pretrial motion to suppress evidence seized at the time of his arrest.[1] We affirm.

## I. *The Facts.*

The On Broadway bar in Toledo, Iowa, was burglarized on January 1, 1994. Based on leads obtained from a surveillance camera at the bar and information received from a bar patron, Toledo police chief Martin began to look for Cadotte.

Martin heard that Cadotte was staying with his grandmother, Elizabeth Roberts, in a trailer home owned by Roberts. Martin went to the door of the trailer and knocked. Roberts told Martin to come in, and he did. Martin told Roberts that he wanted to talk with Cadotte about a break-in, and Roberts asked a young granddaughter to go to a bedroom to get Cadotte. The granddaughter returned and said that Cadotte refused to get out of bed. She also hinted that another man was in the room with Cadotte.

After Roberts again sent her granddaughter to get Cadotte, he came out of the bedroom. While the door was briefly open, Martin saw bottles of Budweiser beer—the brand that had been stolen from the tavern. Cadotte asked Martin if he had a warrant; Martin responded that he did not. Cadotte told Martin to leave, but Martin remained

---

1. Cadotte's motion to suppress does not identify any constitutional or statutory grounds for his motion, but we assume from his argument that he relies on the Fourth Amendment to the United States Constitution.

and began to ask Cadotte about the break-in. The confrontation soon deteriorated into a scuffle, and Martin called for help. Other officers arrived, and Cadotte was subdued.

The officers then entered the bedroom to see if there was in fact a second person there. They thought it was possibly a man implicated in the burglary with the defendant. They found Matt Sanache, a person who was shown on the security camera's tape. While in the bedroom, the officers found the Budweiser beer, liquor, cigarettes, candy bars, and a garbage can—all of which were consistent with the goods taken in the burglary. Cadotte moved, unsuccessfully, to suppress this evidence.

## II. *The Law.*

We review this constitutional question de novo in light of the totality of the circumstances. *State v. Schultzen,* 522 N.W.2d 833, 835–36 (Iowa 1994). Fact-findings underlying the district court's ruling on the motion to suppress are binding on us if supported by substantial evidence. *State v. Frake,* 450 N.W.2d 817, 818 (Iowa 1990).

A search conducted without a valid warrant is per se unreasonable unless a valid exception to the warrant requirement exists. *State v. Cullor,* 315 N.W.2d 808, 811 (Iowa 1982). Valid exceptions exist for those searches (1) with consent, (2) based on probable cause and exigent circumstances, (3) involving items in plain view, or (4) incident to arrest. *State v. Eubanks,* 355 N.W.2d 57, 58–59 (Iowa 1984). The State has the burden to prove by a preponderance of the evidence that a warrantless search falls within one of these exceptions. *State v. Howard,* 509 N.W.2d 764, 766 (Iowa 1993); *State v. Folkens,* 281 N.W.2d 1, 3 (Iowa 1979).

## III. *The Issue.*

The State argues that it had consent to search the trailer based on the grandmother's permission. The defendant counters that the consent was revoked prior to the search. However, despite the lengthy discussion of consent searches, we do not view this as a consent search case. Even under the State's own version of the facts, Martin

had consent only to enter the trailer; he did not request, nor was he given, consent to search. The district court found that Martin was legally on the premises, based on the owner's consent, and that the search was valid as an incident to Cadotte's arrest. These are the issues before us.

## IV. *Legality of the Officer's Presence.*

A. *The consent to enter.* The first question is whether the officer was validly on the premises, and that turns on whether he had consent. Using analogous cases involving consent searches, we conclude that he did. When two or more individuals share a common right of access or control of property to be searched, any one of them has the authority to consent to a warrantless search in the absence of the others. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *State v. Knutson,* 234 N.W.2d 105 (Iowa 1975); *State v. Kelly,* 284 N.W.2d 236 (Iowa 1979). Obviously, if consent to search may be given by such a person, that person may surely give consent to enter, as in this case.

It is undisputed that Roberts, who owned the trailer, consented to Martin's entry. Nothing in the record suggests that this consent was revoked by her. In fact, according to the officer's testimony, she was very cooperative and seemed to encourage the officer's presence. Cadotte was, at most, a part-time occupant of the home, and he had no authority to "revoke" the consent given by the owner. As noted by one authority,

> the hard choice between these opposing positions [of the objecting and consenting parties] need be made only when "two or more persons had equal use of a place in which both are present," as compared to where "one's privacy while present someplace is derivative of and dependent on the privacy of another." In the latter situation, it makes sense that the individual with a predominant interest should prevail. Thus, if that individual were to consent to the search, the search could be conducted notwithstanding the present objection of the person with a lesser interest.
>
> . . . .

... [A]n objection by the person with a superior interest would prevail over a consent given by a person with a lesser interest.

3 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 8.43(d), at 731–32 (3d ed. 1996).

B. *Search incident to arrest.* The search of Cadotte's room followed his arrest for scuffling with the officers. The State urges this as a justification for the search without a warrant. Cadotte contends that, even if it were otherwise proper as a search incident to an arrest, the scope of this search was impermissibly broad because it included a search of the bedroom, which was beyond his reach as the officers restrained him.

The State counters that the expanded scope of the search was justified as a cursory safety check. As we stated in *State v. Holland,* 389 N.W.2d 375, 381 (Iowa 1986),

> [o]ne of the "well-recognized exceptions" to the requirement of a search warrant is the so-called "cursory safety check exception." This exception is based on the practicalities of law enforcement which dictate that in certain emergency situations strict adherence to constitutional safeguards against intrusion into the home may be excused.

(Citation omitted.) We quoted from *United States v. Kolodziej,* 706 F.2d 590, 596 (5th Cir.1983), which was based on facts analogous to the present case:

> Arresting officers have a right to conduct a quick and cursory check of the arrestee's lodging immediately subsequent to arrest—even if the arrest is near the door but outside the lodging—where they have reasonable grounds to believe that there are other persons present inside who might present a security risk.

Here, the owner's granddaughter had suggested to officer Martin that another man was present in the room with Cadotte, and the officers testified that they were concerned that the remaining person in the bedroom might shoot at them through the door. We believe that this constitutes a sufficient basis to extend the scope of the search incident to arrest to include the bedroom.

Because we believe the court properly denied the motion to suppress, we affirm.

**AFFIRMED.**