# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3163

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Mark E. Clayton, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 15, 2000

Filed:  April 28, 2000

_____

Before WOLLMAN, Chief Judge, HANSEN, and MORRIS SHEPPARD ARNOLD,
     Circuit Judges.

_____

WOLLMAN, Chief Judge.

Mark Clayton appeals from the district court's[1] denial of his motion to suppress
evidence.  We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western
District of Missouri, adopting the report and recommendation of the Honorable Sarah
W. Hays, United States Magistrate Judge for the Western District of Missouri.

# I.

Detective Lawrence Cook of the Jackson County Drug Task Force received an anonymous telephone call on January 29, 1996. The caller stated that he had recently been with Clayton and another individual known as "Squirrel" at Clayton's home in Independence, Missouri, and that the home contained a methamphetamine laboratory and a sawed-off shotgun. Cook ran a computer search and found that Clayton's name matched the address the tipster had given and that Clayton had an outstanding arrest warrant for failure to appear on a speeding citation. Based on this information, Cook, Martin Hendrickson, also an officer with the drug task force, and three agents of the federal Drug Enforcement Administration (DEA) drove to Clayton's residence to execute the arrest warrant and to attempt to substantiate the information provided by the telephone call.

With Hendrickson monitoring a passenger in a car parked in Clayton's driveway and the DEA agents stationed just off Clayton's property, Cook knocked on the front door of Clayton's home. A female voice asked who was there and Cook, who was dressed in plain clothes, responded that it was the police. Shortly thereafter the door was opened a few inches by David Russell, a friend of Clayton's who did not live at the residence. Russell indicated that Clayton was inside, told Cook he could come in, opened the door, and motioned toward a couch where Cook saw Clayton sleeping. As he began to step into the house, Cook perceived an odor he associated with a methamphetamine laboratory. On the basis of this smell, Cook called for the DEA agents to come in.

Cook then entered the house and moved quickly to the left to secure Russell. From there Cook was able to view the kitchen, which he scanned in order to ensure that no one was there. Cook observed a gallon-sized pickle jar in the kitchen containing a two-stage liquid that he believed to be methamphetamine. At this time, Clayton awoke and began reaching into the sofa. Suspecting that Clayton was attempting to retrieve

a weapon, Cook aimed his gun at Clayton, while continuing to secure Russell. A DEA agent who had by now arrived also pointed his weapon at Clayton, who put his hands up in response to the agent's order. A search of the couch revealed that Clayton had been reaching for a sawed-off shotgun. Other DEA agents then conducted a sweep-search of the rest of the house and found two women, whom they brought into the living room with Clayton and Russell.

Clayton was then handcuffed and placed under arrest. After the officers determined that the laboratory did not pose a risk of immediate explosion, Clayton was seated in the kitchen and told that the officers would obtain a search warrant for the laboratory. Clayton responded by stating that a warrant was unnecessary and that "it was all his." Although he was informed that the officers, having no search warrant, lacked constitutional authority to search, and that he could refuse to permit a search, Clayton nonetheless signed a consent-to-search form. The officers found numerous items of drug manufacturing paraphernalia in Clayton's kitchen and recovered a sawed-off stock of a shotgun and shotgun shells from the basement.

Later, at the police station, Cook advised Clayton of his Miranda rights. After initialing a card indicating that he understood those rights, Clayton provided Cook with a detailed description of his methamphetamine manufacturing activities over the previous month and explained that he had altered the shotgun. Clayton later moved to suppress this confession as well as the evidence found in his home on the grounds that the search of his residence was illegal. This motion was denied, and Clayton was convicted of manufacturing methamphetamine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), & 846, and using a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1). He was sentenced to 241 months' imprisonment. Clayton now appeals the denial of his motion to suppress.

## II.

Clayton's principal argument on appeal is that the search of his home was unconstitutional because the officers' ostensible reason for visiting his residence--to serve him with an outstanding arrest warrant--was pretextual. The government, which does not dispute that the officers came to Clayton's residence with the dual intention of serving the arrest warrant and investigating the anonymous tipster's allegations, responds that the arrest warrant authorized entry into Clayton's home and that the events that occurred subsequent to their arrival justified the search that ensued. Because Clayton raises this argument for the first time on appeal, we review it for plain error only.[2] See Fed. R. Crim. P. 52(b); United States v. Christians, 200 F.3d 1124, 1128 (8th Cir. 1999). We will not reverse on this basis absent a clear error resulting in manifest injustice. See Roe v. Delo, 160 F.3d 416, 419 (8th Cir. 1998).

A valid arrest warrant carries with it the authority to enter the residence of the person named in the warrant in order to execute the warrant so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling. See Payton v. New York, 445 U.S. 573, 603 (1980); United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999). We agree with those courts that have held that this principle applies with equal force to misdemeanor warrants. See United States v. Spencer, 684 F.2d 220, 222-24 (2d Cir. 1982); United States v. Meindl, 83 F.Supp.2d 1207, 1215 (D. Kan. 1999); cf. Kain v. Nesbitt, 156 F.3d 669, 672 (6th Cir. 1998) (assuming but not holding that principle applies to misdemeanor warrants); United States v. Albrektson, 151 F.3d 951, 953 (9th Cir. 1998) (same); Lyles v. City of Barling, 17 F.Supp.2d 848, 855 & n.6 (W.D. Ark. 1998) (same), aff'd, 181 F.3d 914 (8th Cir. 1999) (same). Clayton does not argue that the outstanding warrant for his arrest was invalid, and we find that the information contained in the anonymous tip, combined with Cook's independent verification of Clayton's address

---

[2]We note that Clayton's present counsel did not represent him at trial.

and Russell's indication that Clayton was there, gave the police a reasonable belief that Clayton lived at the residence and that he was present there at the time.[3] Thus, the issue is whether subjective intent is relevant where the otherwise proper execution of a valid arrest warrant leads law enforcement officers to discover incriminating evidence during an ensuing search.

In Whren v. United States, the Supreme Court stated that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. 806, 813 (1996). Although Whren specifically concerned a traffic stop, we have held that this rule "is applicable to all police activities for which probable cause is required." United States v. Clarke, 110 F.3d 612, 613 (8th Cir. 1997); see also United States v. Hathcock, 103 F.3d 715, 719 (8th Cir. 1997).

This case presents a slightly different question, as the government does not argue that either the anonymous tip or the arrest warrant provided probable cause to search Clayton's residence. We are not, however, the first federal court of appeals to face a pretext argument in the arrest-warrant context. In United States v. Causey, 834 F.2d 1179 (5th Cir. 1987) (en banc), the Fifth Circuit held that a voluntary confession to bank robbery, given after reiterated Miranda warnings, should not be excluded from evidence where the police had arrested the defendant under an outstanding arrest warrant for an unrelated crime with the sole intent of questioning him about the robbery. See id. at 1184-85. This conclusion rested on the Causey court's view, based on its reading of pre-Whren Supreme Court precedent, "that where police officers are objectively doing what they are legally authorized to do . . . the results of their

---

[3]This case, of course, does not involve the "reasonable suspicion" of criminal activity required for an investigative stop under Terry v. Ohio, 392 U.S. 1 (1968). We observe, nonetheless, that corroborating evidence in this case rendered the informant's call considerably more reliable than the uncorroborated anonymous tip recently found inadequate to justify a Terry-stop in Florida v. J.L., No. 98-1993, 2000 WL 309131 (U.S. March 28, 2000).

investigations are not to be called in question on the basis of any subjective intent with which they acted." Id. at 1184.

We believe that Causey was a correct application of then-controlling legal authority, and we know of no intervening decision of the Supreme Court or this circuit indicating that the execution of an arrest warrant for the purpose of discovering unrelated incriminating evidence constitutes an improper exercise of law enforcement authority. Thus, although Clayton's arrest warrant did not provide the police with probable cause to search his residence, the officers were justified in entering his home to arrest him notwithstanding their further subjective intent to investigate the anonymous tip regarding a possible methamphetamine laboratory and sawed-off shotgun. This conclusion, in our view, accords with the broad rule that "[w]hether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time . . . and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott, 436 U.S. at 136) (citations and internal quotation marks omitted). Accordingly, we find that the district court committed no error, much less plain error, in failing to suppress evidence on the grounds that the police visit to Clayton's home was pretextual.[4]

Clayton also presents several arguments in support of his contention that, even if the subjective motivation of the officers who visited his home is irrelevant, the evidence against him nonetheless should have been suppressed. Each of these arguments was considered and rejected by the district court. "We examine the factual findings underlying the district court's denial of the motion to suppress for clear error

---

[4]Thus, although we decline to address the claim, see Christians, 200 F.3d at 1126 (ineffective assistance of counsel claims should be pursued in 28 U.S.C. § 2255 proceedings), Clayton's contention that his appointed trial counsel was ineffective for failing to pursue this argument would likely fail.

and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Neumann, 183 F.3d 753, 755 (8th Cir. 1999). We find Clayton's arguments to be without merit.

We need not address Clayton's contention that Russell was not authorized to consent to Cook's entry because such consent is not required to execute a valid arrest warrant. See Kain, 156 F.3d at 673 (officer who reasonably believed suspect was inside did not need permission from person answering door to execute warrant); United States v. Shurn, 852 F.2d 366, 367 (8th Cir. 1988) (per curiam) (arrest warrant authorizes forcible entry). Once inside the house, Cook quickly developed probable cause for a search based on his immediate perception of an odor associated with methamphetamine production, see United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam) ("plain smell" rule), his visual observation of the pickle jar, see United States v. Risse, 83 F.3d 212, 217-18 (8th Cir. 1996) ("plain view" rule); United States v. Boettger, 71 F.3d 1410, 1416-17 (8th Cir. 1995) (presence of potentially explosive chemicals justifies warrantless search of premises), and Clayton's suspicious motion of reaching into the couch. In addition, the DEA agents' protective sweep of the house following Clayton's arrest appears to have been fully justified as a cautionary measure designed to discover additional persons who may have been hiding in other rooms. See Maryland v. Buie, 494 U.S. 325, 327 (1990); Boyd, 180 F.3d at 975. Nor has Clayton pointed to any circumstances indicating that his subsequent consent to the search of his home was involuntary. See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (court must look to totality of the circumstances to determine whether consent to search was given voluntarily and without coercion); United States v. Dennis, 625 F.2d 782, 793 (8th Cir. 1980) ("[W]here law enforcement officers indicate only that they will attempt to obtain or are getting a warrant such a statement cannot serve to vitiate an otherwise consensual search.") (citation and internal quotation marks omitted).

Finally, because we find that all aspects of the search were valid, Clayton's argument that his later confession was tainted as a result of illegality of the search must fail.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.