STATE of Iowa, Appellee,

v.

Danette Marie KUBIT, Appellant.

No. 99–1213.

Supreme Court of Iowa.

May 31, 2001.

Ryan B. Moorman, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Denise A. Timmins, Assistant Attorney General, Denver D. Dillard, County Attorney, and Laurie J. Craig, Assistant County Attorney, for appellee.

SNELL, Justice.

This case calls upon us to determine the scope of authority to enter a suspect's dwelling afforded by an arrest warrant. The district court held that the arrest warrant alone provides police with the right of entry into a suspect's motel room to effectuate the arrest. Thus, evidence in plain view may be seized. Because we determine that the arrest warrant's authority is not so broad, we reverse the district court's ruling and remand for a new trial.

I. Factual Background and Procedure

The defendant, Danette Marie Kubit, was occupying a motel room at the Shady Acres Motel when police received an anonymous phone call regarding a great deal of human foot traffic near her room. Police determined that the occupant's name was Danette Kubit, and that she had two active Scott County warrants for her arrest on felony drug charges. This occurred in

mid-January. No attempt to arrest Kubit was made at this time.

The police believed that the constant, short-term foot traffic around Kubit's room was a telltale sign of narcotics dealing. This made police suspicious of Kubit's activities and curious to view the inside of the room. Several days later, two plain-clothes officers arrived at the motel room to execute the arrest warrants. One remained in an unmarked car while the other knocked on the door to the room, which opened to the outside. A woman inside the room peered out, but would not open the door. Uniformed police officers were then called to give assistance.

At this point, the remaining facts are in dispute. When uniformed officers again knocked, a woman opened the door and partially stepped out in an apparent attempt to leave. Upon seeing the uniformed officers, she attempted to close the door. One version suggests the woman was inside and trying to keep the officers out. The other version indicates the woman was outside and trying to close the door behind her. Officer Chris Usher prevented her from closing the door by placing his foot in the jam. The plain-clothes officer then approached and identified himself as Officer Stephen Spicher. He told the woman they had two warrants for the arrest of Danette Kubit. At this time, the officers pushed their way into the room for the supposed purpose of confirming the identity of the woman at the door as Danette Kubit. Several different versions of this encounter were described by those present.

While inside, police viewed a baggie in the wastebasket in plain view, consistent with a baggie used for drugs. After a closer look, Officer Spicher observed what he believed to be marijuana residue inside the baggie. Kubit was placed under arrest for possession of the marijuana in the wastebasket and the evidence was seized. On this charge, Kubit filed a motion to suppress the baggie evidence taken from her motel room on the ground that police had no right to enter her room under the guise of executing the arrest warrants.

Kubit's suppression motion was denied. The district court held: "By virtue of the fact [police] are armed with arrest warrants, they do have authority to enter." Kubit agreed to a stipulated trial on the minutes of testimony. She was convicted of one count of possession of a controlled substance and sentenced to twenty days incarceration in the county jail, fined $300, and her license revoked for 180 days. *See* Iowa Code § 124.401(5) (1999). She appeals this conviction. The issue before us today is whether police violate a defendant's Fourth Amendment right to be free from unreasonable searches and seizures when they force their way into a suspect's motel room to execute an arrest warrant after coming in contact with the suspect at the door to her room.

II. Scope and Standard of Review

Kubit challenges the district court's ruling on her suppression motion. This motion involved Fourth Amendment issues. U.S. Const. amend. IV; Iowa Const. art. I, § 8. Because the basis for this motion rested on constitutional principles, we review such a ruling de novo. *State v. Prior*, 617 N.W.2d 260, 262–63 (Iowa 2000); *State v. Canas*, 597 N.W.2d 488, 492 (Iowa 1999) ("We review this constitutional question de novo in light of the totality of the circumstances."). Under this independent evaluation, we are bound only by the district court's factual determinations based upon substantial evidence.

*Canas,* 597 N.W.2d at 492. As such, we may search the entire record to aid our review. *State v. Breuer,* 577 N.W.2d 41, 44 (Iowa 1998).

In the present case, the district court made no factual findings. It held that regardless of the discrepancies in testimony given by the officers and the suspect, the arrest warrant alone justified the officers' entry. Because our review is de novo, we need not give deference to this holding. As such, we are not bound by the district court's decision and are free to accept or reject any facts presented to us in the record.

III. Issue on Appeal

■ An arrest warrant does not give police the same authority of access to a suspect's home that a search warrant authorizes. We take any government intrusion into a citizen's dwelling very seriously. *See State v. Brant,* 260 Iowa 758, 763, 150 N.W.2d 621, 625 (1967) ("[T]he right of officers to thrust themselves into a home is of grave concern...."). Therefore, uninvited entry into a suspect's home without a search warrant must be constitutionally justified. "A search conducted without a valid warrant is per se unreasonable unless a valid exception to the warrant requirement exists." *State v. Cadotte,* 542 N.W.2d 834, 836 (Iowa 1996) (citing *State v. Cullor,* 315 N.W.2d 808, 811 (Iowa 1982)). Those exceptions include: (1) a search with consent, (2) a search based on probable cause and exigent circumstances, (3) a search of items in plain view, or (4) a search incident to a lawful arrest. *Id.; accord State v. Cline,* 617 N.W.2d 277, 282 (Iowa 2000). It is the State's burden to prove by a preponderance of the evidence that a warrantless search is justified by one of the above exceptions. *Cadotte,* 542 N.W.2d at 836.

■ The presence of a valid arrest warrant is not a recognized exception. Rather, the exception under which the State justifies seizure of the baggie in this case is plain view of the evidence. The question then is do the officers have a right to enter Kubit's motel room to execute arrest warrants. For the plain view exception to apply, police must be rightfully in the place that allows them to make the observation. *State v. Vincik,* 436 N.W.2d 350, 353–54 (Iowa 1989); *State v. Smith,* 178 N.W.2d 329, 332 (Iowa 1970). The fact that this was a motel room instead of a home is of no consequence. We note that "[a] hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office." *Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374, 381 (1966); *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, 861 (1964).

■ Kubit makes two arguments against the validity of the officers' presence in her motel room. The first one can be disposed of easily. Kubit maintains that because the officers' execution of the warrants against her was pretextual for entry into her room, their actions cannot be justified under the rules for executing arrest warrants. Our court has, on countless occasions, refused to apply a subjective test when determining if the protections of the Constitution were afforded. *See, e.g., State v. Hofmann,* 537 N.W.2d 767, 769–70 (Iowa 1995); *State v. Garcia,* 461 N.W.2d 460, 463–64 (Iowa 1990). Instead, we look for an objective basis to justify the official conduct. "So long as the officer is legally permitted and objectively authorized to do so, an arrest is constitutional." *Hofmann,* 537 N.W.2d at 770.

■ Support of our objective test also comes from the Supreme Court. "Wheth-

er a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind...." *Maryland v. Macon*, 472 U.S. 463, 470, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370, 378 (1985) (citation omitted); *accord United States v. Clayton*, 210 F.3d 841, 843–44 (8th Cir.2000). Here, as long as a valid reason for the officers' presence exists, the officers' real motives are of no usefulness.

Kubit's better argument is that an arrest warrant that can be executed from the outside of a dwelling does not authorize entry into the dwelling. Support for this contention can be found in *Canas*, 597 N.W.2d at 493. Our court invalidated the search of a motel room following the arrest of its occupant while outside the room. *Id.* at 493, 497. *Canas* involved a tip that a suspect, for whom there was an outstanding arrest warrant, might be staying at a local motel. Three law enforcement officers went to the motel to execute the warrant. When they arrived, they observed Canas standing outside his room. Upon seeing police, he immediately ran inside and slammed the door. The officers then knocked at the motel room, and when Canas opened the door, police pulled him outside to arrest him. Following Canas's arrest, police entered his motel room to conduct a search where they found drug paraphernalia. This search was the subject of a motion to suppress.

The State tried to justify their presence in and search of the motel room under the search incident to a lawful arrest exception. We rejected this argument because Canas was never able to re-enter the room after his arrest. *Id.* at 492–93. We concluded:

The warrantless search of defendant's motel room was not a valid search incident to an arrest.... The defendant's motion to suppress should have been granted, and the admission of the evidence seized from his motel room was not a harmless error. We reverse the defendant's conviction....

*Id.* at 497. Under *Canas*, if Kubit had been arrested outside, police would not have been constitutionally permitted to enter her room and seize items in plain view. It follows then that an arrest that can occur on the outside of a dwelling should be executed on the outside. While this is a persuasive case if the arrest had occurred outside, our disputed facts present a slightly different scenario.

Here, it is disputed that Kubit actually stepped outside her room. There is evidence from two officers, corroborated by the suspect, that it looked like Kubit was trying to leave her room and close the door behind her. Conversely, Officer Usher testified that Kubit merely peeked around the door and thereupon tried to escape back into her room by closing the door.

This dispute in the testimony comes from the four versions of the event provided by police and Kubit. Officer Spicher was one of two plain-clothes officers on the scene. He was sitting in an unmarked car eight feet outside the door when Kubit opened it. He testified that he was unsure whether Kubit "was either trying to get her door shut and get out of there or whatever." He characterized Kubit's actions as an attempt to exit the motel room. In his deposition, Officer Spicher said it appeared she was trying to leave and close the door behind her. He remembered her wearing a book bag. After she came to the door, he got out of the car and told her

they needed to come in her room to talk. At this point, he and Officer Usher pushed their way inside.

Officer Usher was the uniformed officer at the door when Kubit opened it. He testified that rather than step out, Kubit only opened the door eight to twelve inches. She then tried to close the door when she saw the uniformed officer, who, until that time had tried to remain off to the side. Officer Usher testified that he put his foot in the door to prevent her from closing it. It was then that Office Spicher identified himself and told Kubit his purpose. At this point, Officer Usher maintains they were allowed in the room, but admits the officers had to physically push the door open to enter. He also admits that his recollection of the event is somewhat rough.

Next, Officer Anderson testified. She was the first plain-clothes officer to knock on the door. When asked to identify herself by Kubit, Officer Anderson told Kubit that she was "Mindy." No entry was secured, so uniformed officers were called in. That is when Officer Usher arrived. Officer Anderson sat in the unmarked car while Usher knocked. From her vantage point, Officer Anderson testified that it appeared Kubit was trying to leave her room. Anderson saw Kubit trying to push her way out and step into the alleyway. She was unable to get out because Officer Usher and then Officer Spicher blocked her and stepped inside. She never saw Kubit voluntarily attempt to re-enter the room or close the door on the officer. She remembered seeing Kubit attempting to exit with a book bag on her shoulder.

The last person to testify was Kubit. She first noted that when "Mindy" knocked and asked if she was Danette, Kubit answered that she was. She had just gotten out of the shower and was not dressed. When the later knocks occurred, she was still undressed. She told them to wait, and she was coming out. She looked out and saw no one, but by the loud persistent knocking, she assumed it was the police. She opened the door when she was ready to exit to find a uniformed officer standing there. As she tried to close the door behind her, the officer prevented this. Then two officers stepped in, pushing her back with them. It was not until they were back inside the room that police stated their purpose.

Clearly, Officer Usher's version is at odds with the two other officers' versions. Kubit's version is corroborated by these two officers. When there is inconsistency between the various versions, we look at the totality of the testimony to determine which version is supported by substantial evidence. Three of the four statements indicated that Kubit was trying to step out of her room to leave when police pushed their way in. The one officer to testify to the contrary admitted that he did not remember the chain of events well. The weight of the testimony makes it clear that Kubit did not remain inside her room by choice. As such, we are persuaded that the substantial evidence indicates Kubit was attempting to exit her room and was partially out when the officers pushed their way inside. Moreover, constitutional rights should not swing on the frayed rope of an officer's fading memories of how he invaded a home.

There is ample law that police may forcibly enter a dwelling to execute a warrant after their attempts to peaceably make the arrest are thwarted. Iowa Code § 804.15 (detailing police must first knock, announce, and wait for noncompliance before entering to execute an arrest warrant);

*see also Hofmann,* 537 N.W.2d at 768–70 (upholding entry into home where police's knock goes unanswered). However, the substantial evidence here indicates that Kubit was attempting to allow police to peaceably arrest her by exiting her room. When Kubit came to the door, the right of police to enter and execute may have dissipated.

■ An Iowa statute gives police the right of entry only where they first announce who they are and what their purpose is, but the suspect will not answer. Iowa Code § 804.15. Section 804.15 states:

> If a law enforcement officer has reasonable cause to believe that a person whom the officer is authorized to arrest is present on any private premises, the officer may *upon identifying the officer as such,* demand that the officer be admitted to such premises *for the purpose of making the arrest. If such demand is not promptly complied with,* the officer may thereupon enter such premises to make the arrest, using such force as is reasonably necessary.

*Id.* (emphasis added). A purpose of this "knock and announce rule" is to protect the privacy of the citizen and is governed under the reasonableness requirement of the Fourth Amendment. *See State v. Farber,* 314 N.W.2d 365, 369–70 (Iowa 1982); *State v. Brown,* 253 N.W.2d 601, 602 (Iowa 1977); *see also* 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.6(b), at 184–86 (2d ed.1999) [hereinafter LaFave].

■ By Kubit coming to the door, the option to enter under this statute, assuming announcement is first made, is over. Moreover, when the officers waited until Kubit actually answered the door and stepped out—there was no longer any right or necessity to forcibly enter to find a suspect. As such, because Kubit complied with the knock, it was not reasonable for police to force her back inside. The State's argument, that police were justified to enter under this statute because Kubit tried to escape back inside, is not supported by the greater weight of the testimony.

All of the law cited by the State that gives the police limited authority to enter the dwelling to execute an arrest warrant is qualified to apply to situations where the suspect will not come out but police know he is within, no one answers the door, or police demands are not immediately complied with. *See, e.g., Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639, 661 (1980); *Clayton,* 210 F.3d at 843–44; *United States v. Shurn,* 852 F.2d 366, 367 (8th Cir.1988). The Supreme Court has held: "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton,* 445 U.S. at 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 661. However, the language in *Payton* is distinguishable from the present case because it does not address a scenario where the suspect is already outside or trying to come outside. *See United States v. Albrektsen,* 151 F.3d 951, 954 (9th Cir.1998) (holding that "cases where there was both a warrant and some reason to believe the defendant might live at and be present *within* the premises do not help the government in [a] case [where the defendant is at the threshold]"). Moreover, *Payton* does not require the knock and announce procedures for executing arrest warrants mandated by our law.

■ We are also persuaded by the logic of our decision in *State v. Tolsdorf,* 574

N.W.2d 290, 292 (Iowa 1998). In *Tolsdorf*, after being arrested away from his car, the defendant requested to go back and secure his car. *Id.* at 291. Police agreed and then proceeded to search his car incident to the arrest. We upheld this search because it was the defendant's idea to return to the car. *Id.* at 292. *See generally* 2 LaFave § 3.6(d), at 188–90. However, we warned against situations where the police suggest the defendant return to his car as a pretext to search it.

> Courts must be alert, however, to the possibility that the police caused the defendant to move toward or into the vehicle so that they could rely upon that movement to justify what would otherwise be an unreasonable search of the car.

*Tolsdorf*, 574 N.W.2d at 292. *Tolsdorf* does not look to police motives, but to police actions. Kubit argues that police's efforts to get her back in her room to effectuate her arrest cannot be justified under *Tolsdorf*. We agree. The version of the encounter that is supported by the most evidence offends the above warning. Police forced Kubit into the room so that they could get inside to see what was in plain view. Because Kubit's arrest could have been accomplished on the outside, and it was not Kubit's idea to return inside, the actions of police cannot justify their presence and seizure of items in plain view.

■ Further, we are not persuaded by the argument that police needed to enter the room to properly identify Kubit. First, it is clear from the record that those involved were reasonably certain the woman inside was Kubit. Second, testimony indicated that Kubit was carrying her purse, the object most likely to contain her identification. And third, Officer Spicher testified that the general practice is to take the suspect to the squad car and then try to ascertain identity. Here, Officer Spicher testified that they could not do this because the closest police car was a camaro, with limited back seat room. The marked cars were more than fifty yards away, and Spicher testified it was just easier to go inside. Police ease, without exigency, cannot validate an otherwise unconstitutional entry.

■ Moreover, if police can enter a home under these circumstances, then section 804.15 is eroded to the extent that it authorizes entry only after the demand is not met. It is clear Kubit was meeting the demand by responding to the knock. Under the statute, entry is an option available only after the suspect does not respond to the knock and announce rule. If an arrest warrant allows police to enter the home regardless of the actions of the suspect, the purpose of section 804.15 is eviscerated and the protection of the Fourth Amendment's search warrant requirement is destroyed.

Our opinion today also finds support in other jurisdictions. In *United States v. Albrektsen*, the Ninth Circuit invalidated the invasion into the defendant's motel room to execute arrest warrants because the arrest could have occurred on the threshold. *Albrektsen*, 151 F.3d at 953–54. In this case, police went to the suspect's motel room to place him under arrest. Albrektsen came to the door and rather than arrest him there, the officer pushed him back inside to be able to look around for evidence of narcotics. *Id.* at 952. The Ninth Circuit recognized:

> "Nowhere is the protective force of the [F]ourth [A]mendment more powerful than it is when the sanctity of the

home is involved. The sanctity of a person's home, perhaps our last real retreat in this technological age, lies at the very core of the rights which animate the amendment. Therefore, we have been adamant in our demand that absent exigent circumstances a warrant will be required before a person's home is invaded by the authorities."

But, says the government, there were warrants in this case, arrest warrants. Of course there were, but they formed a necessary rather than a sufficient basis for the entry. They did not, by themselves, allow the invasion of Albrektsen's motel room. There can be little doubt that police can enter a dwelling for the purpose of executing an arrest warrant. That, however, does not mean that officers armed with a warrant can enter a private home at any time or for any reason. Quite the contrary. Because our free society embraces the protections of the Fourth Amendment with appetency, rather than velleity, the courts have demanded more than the mere existence of a warrant.

*Id.* at 953 (footnotes and citations omitted) (quoting *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 884 (9th Cir.1990)). With that basis, the court held:

[The officer] knew that Albrektsen was not somewhere back in the room; he was standing right before [the officer] at the threshold.... [H]e could have arrested Albrektsen right then, and had no need to push into the room for that purpose.... [T]he arrest of Albrektsen with a warrant could have been effected at the doorway of his motel room. It should have been; there was no need to do otherwise. In fine, it was not "necessary to arrest him" in the depths of the room, and that "invasion of

[Albrektsen's] privacy interest" in order to effect the arrest was, therefore, not authorized.

*Id.* at 954 (fifth alteration in original) (footnote omitted) (quoting *Steagald v. United States,* 451 U.S. 204, 214 n.7, 101 S.Ct. 1642, 1648 n. 7, 68 L.Ed.2d 38, 46–47 n. 7 (1981)). Finally, we agree with the Ninth Circuit that this type of case

demonstrates why our patrol of the boundary between the sanctity of the home and officers of the law must be sempiternal. The laudable desire to detect and stamp out crime continually threatens to undermine the equally laudable protections of the Fourth Amendment. That must not happen.

... [T]he mere existence of an arrest warrant does not authorize entry into a defendant's home, where there is no necessity to enter because the defendant can be arrested at the threshold of that home. An officer's curiosity about the contents of the home must go unsatisfied.

*Id.* at 955.

In conclusion, when a suspect attempts to comply with the demands of police and exits her room, police may not force her back inside to make the arrest. The arrest warrant does provide authority to enter when the provisions of section 804.15 are met. However, compliance by the suspect destroys this authority unless exigent circumstances exist or some other exception applies. As such,

where, as in this case, there is no impediment to making an arrest in a doorway, ... the officers may not intrude into the house over the objection of the arrestee, simply to complete effectuation of the arrest and put the officers into a position where they can more fully observe

the interior of the premises—absent any other reasonable justification for the entry....

*State v. Peterson*, 108 Idaho 463, 700 P.2d 85, 87 (Ct.App. 1985).

Because the greater weight of the testimony does not support any exigency theory, the police entry into Kubit's motel room was not constitutionally justified.

[E]ntry into [the suspect's] house, without a warrant to search the premises and when he easily could have been arrested on his doorstep, [is] an impermissible invasion of [his] right of privacy and to be free from an unreasonable search and seizure under the [F]ourth [A]mendment to the United States Constitution.

*Id.* Under these circumstances, the plain view exception does not apply. Kubit's motion to suppress the evidence illegally seized from her motel room should have been sustained. The failure to do so was not harmless error. Accordingly, we reverse the district court's decision and remand for a new trial.

**REVERSED AND REMANDED.**

All justices concur except CARTER and CADY, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent.

As the Supreme Court recognized in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980):

It is true that the area that may legally be searched is broader when executing a search warrant than when executing an arrest warrant in the home.... This difference may be more theoretical than real, however, because the police may need to check the entire premises for safety reasons....

*Payton*, 445 U.S. at 589, 100 S.Ct. at 1381, 63 L.Ed.2d at 652 (citations omitted). It appears without dispute in the combined testimony of the witnesses on this issue that defendant opened the door when the police announced their presence and was never allowed to exit the room or close the door on the officers. That was because the officers were in the process of arresting defendant pursuant to a valid arrest warrant. In so doing, it was up to the officers to determine on which side of the threshold the arrest would be completed. The officers elected to complete the arrest on the motel-room side of the threshold and, in so doing, were in a place where they had a right to be. Apparently, the marijuana seized was in plain view. But, if it was not, the search that occurred did not go beyond that which is allowed in a search incident to a valid arrest.

I would affirm the judgment of the district court.

CADY, J., joins this dissent.