# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1797

_____

United States of America,

        Appellee,

        v.

David M. Nanos,

        Appellant.

_____

No. 06-1821

_____

United States of America,

        Appellee,

        v.

Johnnie D. Dethrow, also known as
Jerry Lee Rich,

        Appellant.

*
*
*
*
*
*
*
*
*

Appeals from the United States
District Court for the Western
District of Missouri.

[UNPUBLISHED]

_____

Submitted: November 14, 2006
Filed: December 13, 2006

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.
_____

PER CURIAM.

David M. Nanos and Johnnie D. Dethrow pleaded guilty to conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and aiding and abetting each other in carrying a firearm, in violation of 18 U.S.C. § 924(c). The charges stemmed from an incident involving the purchase of methamphetamine precursors at a Wal-Mart in Independence, Missouri. Nanos and Dethrow conditioned their pleas on their right to challenge the district court's[1] denial of their motions to suppress. Finding no error in the denial of their suppression motions, we affirm.

Nanos and Dethrow contend the district court should have suppressed evidence seized subsequent to their arrests because the arrests stemmed from an improper investigatory detention and no probable cause existed for their arrests. "[W]e review for clear error the facts supporting a denial of a motion to suppress and review de novo the legal conclusions based on the facts." United States v. James, 353 F.3d 606, 612 (8th Cir. 2003).

"Law enforcement officers may briefly detain an individual for investigative purposes if they have a reasonable and articulable suspicion of criminal activity." United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006) (citations omitted). The investigating officer, Christina Nunez, had been told by a Wal-Mart loss-prevention employee that Dethrow and a female companion had split up after shopping together and selecting for purchase pseudoephedrine, hydrogen peroxide, and coffee filters—three items Nunez knew to be methamphetamine precursors. Thereafter,

_____

[1]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

Nunez observed: (1) Dethrow and his female companion leave the store separately; (2) Dethrow and his female companion talking on cell phones as Dethrow left the store; (3) Dethrow pacing outside the front doors of the store despite very cold conditions; (4) Dethrow's female companion taking an extremely long time to check out at a self-check-out register while constantly looking around; and (5) Dethrow and his female companion reuniting at a vehicle parked outside of Wal-Mart; Dethrow was in the driver's seat and Nanos in the backseat. Given the totality of the circumstances, we find Nunez had an objectively reasonable and articulable suspicion of criminal activity sufficient to justify an investigatory stop. See, e.g., United States v. Ameling, 328 F.3d 443, 448 (8th Cir. 2003) (concluding stop of suspect's vehicle was justified after officer learned from reliable source or observed: two suspects who had entered store together split the purchase of four boxes of pseudoephedrine, known to the officer to be a methamphetamine precursor, the suspects did not leave the store together but reunited at one of the suspect's vehicles, and the suspects went to another store and purchased lithium batteries, also known to the officer to be a methamphetamine precursor).

As part of the investigatory stop, Nunez was entitled to conduct an investigation "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). We agree with the district court that Nunez acted properly in securing the keys to the vehicle (for officer and bystander safety), in asking Dethrow and his female companion to keep their hands in plain sight (for officer and bystander safety), in calling the vehicle license number in to the police dispatch center (to dispel her suspicion of criminal activity), and in removing Dethrow's female companion from the vehicle and conducting a pat-down search after she refused to keep her hands in plain sight during the brief investigation despite being directed to remain still on two prior occasions (again for officer and bystander safety). See United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999) ("During a Terry stop, officers can check for weapons and may take any additional steps that are 'reasonably necessary to protect their personal safety and to maintain the status quo

-3-

during the course of the stop.'" (quoting <u>United States v. Hensley</u>, 469 U.S. 221, 235 (1985))).

Finally, we agree with the district court that the officers had probable cause to arrest Nanos and Dethrow. Coupled with the information provided by reliable sources (trained loss-prevention employees) and their own pre-arrest observations, Nunez and another officer developed probable cause to arrest the occupants of the car after smelling a heavy chemical odor—familiar to the officers as the odor of methamphetamine manufacturing—as Dethrow's female companion exited the vehicle. <u>See, e.g.</u>, <u>United States v. Clayton</u>, 210 F.3d 841, 845 (8th Cir. 2000) (finding officer "developed probable cause for a search based on his immediate perception of an odor associated with methamphetamine production").

We therefore affirm the district court.

_____