# IN THE COURT OF APPEALS OF IOWA

No. 22-0780
Filed March 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TANNER ALAN SORENSEN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Patrice Eichman, District Associate Judge.

A defendant appeals the denial of his motion to suppress and subsequent conviction. **REVERSED AND REMANDED.**

Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

Following a trial on the minutes and conviction for possession of a controlled substance, second offense (methamphetamine), Tanner Sorensen appeals the district court's denial of his motion to suppress, arguing the evidence collected against him was found while officers were illegally in his home or using a search warrant obtained based on their findings during the initial illegal entrance. Because officers wrongfully entered Sorensen's home by not complying with the last step of Iowa Code section 804.15 (2020), the evidence they collected in their subsequent movement around the home and later search warrant should have been suppressed. As such, we reverse the district court's denial of the motion to suppress and Sorensen's conviction; we remand for proceedings consistent with this opinion.

**I. Facts and Procedural History.**

Stemming from items recovered by troopers while executing an arrest warrant and a subsequent search warrant on Sorensen on February 1, 2020, Sorensen was charged with new crimes, including possession of a controlled substance, second offense (methamphetamine). Sorensen moved to suppress evidence found while the troopers were inside his home during the initial execution of the arrest warrant and the evidence found during the subsequent search pursuant to a search warrant.

At the suppression hearing, testimony established that on the morning of February 1, 2020, Iowa State Troopers Jordan Barnes and Macabe Schmidt arrived at Sorensen's home to execute an arrest warrant. Sorensen's friend Dayton Reicks arrived at the home about the same time. Reicks and Trooper

Barnes both walked up to the front door while Trooper Macabe walked behind the home. Reicks confirmed he was there to see Sorensen, and Trooper Barnes testified he knocked and stated "something along the lines of state patrol or police."[1] When they did not get an answer at the door after no more than thirty seconds,[2] Reicks opened the door and went inside; Sorensen was visible just inside the door so Trooper Barnes was able to see Sorensen and confirmed his identity.

Trooper Barnes testified at the suppression hearing that, right upon seeing Sorensen, he asked him if he was Tanner and "immediately" told him why he was there[3]—to serve a warrant for Sorensen's arrest. According to Trooper Barnes, he then told Sorensen, who was only partially dressed, that he could get dressed before going to jail. Sorensen walked toward the back of the house, and Trooper Barnes followed him to make sure Sorensen did not retrieve a weapon. As they moved through the house, Trooper Barnes saw Sorensen grab something from the kitchen table.[4] Laid out on that same kitchen table, Trooper Barnes saw—without needing to move anything—a torch lighter, containers he knew were commonly used to hold tetrahydrocannabinol (THC) wax, wax paper with THC wax on it, and metal picks.[5] There was also a trunk on the table that held a glass pipe, more wax

---

[1] Reicks testified he was the one who knocked on the door.
[2] Trooper Barnes testified he could hear the shuffle of feet inside but could not tell if they were coming toward the door or not.
[3] But the trooper also testified to a different version of events, claiming he "walked in [and] stated he had a mittimus warrant for his arrest."
[4] The State does not argue the kitchen table would have been in Trooper Barnes's plain view had he not crossed the threshold of the home.
[5] Trooper Barnes is a certified drug recognition expert. He testified at the suppression hearing that marijuana plants can be further refined to a more potent THC wax that is typically smoked. He testified that torch lighters are the lighter of

residue, and a razor blade. Trooper Barnes asked Sorensen what he had grabbed—eventually, Sorensen produced a glass bong and more containers of THC wax.

Sorensen told a different account. He testified he was asleep when the troopers arrived at his home and did not wake up to the doorbell, but to his dogs. When he came into the living room, he found Reicks holding his dogs and an officer holding the door open while the other stepped inside. No one told him he was under arrest at that point. During Sorensen's testimony at the suppression hearing, he said, "All I recall is they said they needed to speak with me and I asked them if I could get some clothes." He was given no warning the officers would follow him. He walked through the kitchen to go to the basement and retrieve clothes from the laundry room. On his way, he grabbed the bong and two containers of wax off of the kitchen table and hid them, leaving only the torch lighter on the table. When he came upstairs, the officer following him told him about the arrest warrant and asked him what he had hidden. Eventually, Sorensen produced the bong and wax. Trooper Barnes placed Sorensen in handcuffs and read his *Miranda* rights,[6] then took Sorensen to jail for the original warrant. Trooper Barnes

---

choice for using THC wax because of the temperature needed for it to melt. And, he testified the picks are commonly used to get the wax out of the containers.

[6] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that a prosecutor cannot use statements made while an individual is in custodial interrogation unless "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed" to protect "the privilege against self-incrimination"); *State v. Schlitter*, 881 N.W.2d 380, 395 (Iowa 2016) (using the federal *Miranda* standard to evaluate both a federal and state constitutional claim while "reserve[ing] the right to apply that standard in a different fashion from the federal caselaw"), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189, 197, 202 (Iowa 2022)).

successfully applied for a search warrant and returned to the home to execute the search. In the meantime, another trooper remained in the home's living room with Sorensen's girlfriend.

Trooper Barnes's application for the search warrant outlined what he saw on the kitchen table, including a torch lighter, the containers used for wax, THC wax on wax paper, the picks, and the case holding a glass pipe, wax residue, and a razor blade. It also mentioned the bong and additional containers that Sorensen hid and later produced. The subsequent search revealed a number of pills, two of which were determined to be methamphetamine, and a third pill determined to be buspirone, a prescription drug.

The district court denied the motion to suppress, and Sorensen agreed to a trial on the minutes for the charge of possession of a controlled substance, second offense (methamphetamine). The district court convicted Sorensen of the charge.

Sorensen now appeals the district court's ruling on the motion to suppress.

## II. Discussion.

Sorensen argues (1) Trooper Barnes did not comply with Iowa Code sections 804.14 and 804.15, violating his state and federal constitutional rights by entering and following him through his home; (2) Trooper Barnes interrogated him before informing him of his *Miranda* rights; and (3) the search warrant obtained based on evidence found through the unconstitutional invasion of his home and interrogation was illegally issued and executed.

We review the denial of a motion to suppress based on constitutional protections de novo. *State v. Hague*, 973 N.W.2d 453, 458 (Iowa 2022). "We review the entire record to independently evaluate the totality of the circumstances

and examine each case 'in light of its unique circumstances.'" *Id.* (citation omitted). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017) (citation omitted). Insofar as Sorensen's motion to suppress is based on a statute, our review is for correction of legal error. *See State v. Casper*, 951 N.W.2d 435, 437 (Iowa 2020).

"[Law enforcement] intrusion into the home implicates the very core of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution." *State v. Wilson*, 968 N.W.2d 903, 911 (Iowa 2022). "Possession of an arrest warrant alone is constitutionally sufficient for entry into a suspect's own residence to effect his arrest." *State v. Luloff*, 325 N.W.2d 103, 105 (Iowa 1982); *see also Payton v. New York*, 445 U.S. 573, 603 (1980) ("Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). But, common law has long recognized that "law enforcement officers must announce their presence and provide residents an opportunity to open the door," and this protection is further protected by the Fourth Amendment. *Hudson v. Michigan*, 547 U.S. 586, 589 (2006); *see also Wilson v. Arkansas*, 514 U.S. 927, 934 (1995) (holding that the "common law principle of announcement" is "an element of the reasonableness inquiry under the Fourth Amendment," though there are exceptions that would ameliorate the requirement). Courts have recognized the purpose of the "knock-and-announce rule"—codified in Iowa in section 804.15—is to protect "human life and limb, because an unannounced entry may provoke violence in supposed self-

defense by the surprised resident"; "give[] individuals 'the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry'"; and protect the resident's dignity by providing them a chance "'to prepare themselves for' the entry of [law enforcement]." *Hudson*, 547 U.S. at 594 (citations omitted); *see also State v. Pranschke*, No. 16-1104, 2017 WL 2461556, at *6 n.5 (Iowa Ct. App. June 7, 2017) (citing the reasons outlined in *Hudson*).

But here, because of Reicks's entry, Trooper Barnes found the door open and Sorensen just a few feet away from the threshold. No one disputes that there was an active warrant issued for Sorensen's arrest or that Troopers Barnes and Schmidt had reasonable cause to believe Sorensen was in the house. And even accepting Trooper Barnes's account, as the district court determined was the more credible version of events, there was no proof that Trooper Barnes demanded admittance to the home to make the arrest—instead, he simply walked crossed the threshold. At the suppression hearing, when discussing his entrance, the following exchange occurred:

> Q. But it doesn't sound like in your testimony you demanded permission to enter the residence. It sounds like you were in the residence by the time Mr. Sorensen was coming toward the door. A. I never stepped foot inside the house until I identified Mr. Sorensen standing in the living room.
> Q. Okay. Did you ask him will you give me permission to come in? A. Well, at that point I identified him and I knew he had a warrant for his arrest. And as far as I'm aware it was his property and he's on the mortgage or the lease and he was the one that I physically identified.

Likewise, the court found no evidence that Trooper Barnes demanded to be allowed entry into the home. Following the court's reasoning, the State argues that, because Trooper Barnes knocked and announced he was law enforcement

and Sorensen did not open the door but Reicks did, he had the authority to enter the residence because Sorensen did not promptly comply.

Yet, even in the situation we find here, the behavior of law enforcement is tempered by statute. Section 804.15, titled "Breaking and entering premises—demand to enter," states:

> If a law enforcement officer has reasonable cause to believe that a person whom the officer is authorized to arrest is present on any private premises, the officer may upon identifying the officer as such, demand that the officer be admitted to such premises for the purpose of making the arrest. If such demand is not promptly complied with, the officer may thereupon enter such premises to make the arrest, using such force as is reasonably necessary.

There are few Iowa cases interpreting section 804.15. From the statute's title, one might presume it addresses only blocked entry to a private home, but our supreme court analyzed section 804.15 as it pertained to law enforcement's scope of authority afforded by an arrest warrant where the defendant actually opened the door. *See State v. Kubit*, 627 N.W.2d 914, 921 (Iowa 2001), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). In *Kubit*, after the district court ruled that an arrest warrant alone justified the officers' entry into the hotel room, the supreme court found that "an arrest warrant does not give police the same authority of access to a suspect's home that a search warrant authorizes." 627 N.W.2d at 918. Thus, in *Kubit,* after recognizing an arrest warrant was not an exception to a warrantless search, the question boiled down to if the officers had a right to enter Kubit's motel room to execute the arrest warrant in the first place, similar to what we are considering here. *See id.*

After police officers knocked on Kubit's motel room door, she opened the door and began to step outside, attempting to close the door behind her. *Id.* at

917. But an officer held the door open with his foot, and a number of "officers pushed their way into the room for the supposed purpose of confirming the identity of the woman at the door." *Id.* At that time, a baggie of marijuana was found in her trashcan. *Id.* Kubit was arrested, and the evidence was seized from her; the district court denied her subsequent motion to suppress the evidence stating "[b]y the virtue of the fact [police] are armed with arrest warrants, they do have the authority to enter [the home]." *Id.* (second alteration in original). But our supreme court, relying on section 804.15, reversed that ruling and suppressed the evidence found when the officers entered her dwelling because their entrance violated the defendant's Fourth Amendment rights. *Id.* at 924 (noting "an arrest that can be executed from outside the dwelling does not authorize entry into the dwelling").

To be sure, Sorensen's case is not on all fours with *Kubit*. One main distinction is that Sorensen never left the house and made no effort to leave, thus the arrest could not be made off-premises. And, once law enforcement's efforts to peaceably make the arrest are thwarted, "ample law" supports that they may forcibly enter the dwelling. *Id.* at 921 (citing Iowa Code section 804.15—"detailing police must first knock, announce, and wait for noncompliance before entering to execute an arrest warrant"). Still, it makes sense that when Reicks opened the door to find Sorensen standing there, there was no need to "forcibly enter to find a suspect" as was also the case in *Kubit*. 627 N.W.2d at 921 ("By Kubit coming to the door, the option to enter under [804.15], assuming announcement is first made, is over.").

To complete an arrest in a person's home, the legislature gave law enforcement several steps to follow in section 804.15. And we must interpret the

language of the statute to give the words meaning. *See Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1977) ("We are guided by what the legislature actually said, rather than what it might have or should have said."). Under the steps provided by section 804.15 and the guidance of *Kubit*, as a final step before entry, Trooper Barnes was required to demand entrance to effectuate the arrest and give Sorensen the opportunity to comply.[7] This opportunity to comply is essential because it is the compliance or noncompliance of the individual that either confers or extinguishes an officer's ability to enter the home with only an arrest warrant. *Kubit*, 627 N.W.2d at 923. "If an arrest warrant allows police to enter the home regardless of the actions of the suspect, the purpose of section 804.15 is eviscerated and the protection of the Fourth Amendment's search warrant requirement is destroyed." *Id.* at 922.

A "purpose of this 'knock and announce rule' is to protect the privacy of the citizen and is governed under the reasonableness requirement of the Fourth Amendment."[8] *Id.* at 921. Yet, it seems somewhat unnecessary that, once

---

[7] Here, the court made specific credibility findings concluding that Trooper Barnes's testimony was more reliable and credible. We agree with that conclusion; even so, the legal obstacles cannot be overcome.

[8] As far as we can tell, Iowa does not recognize the "useless gesture exception" to the announcement rule, which may support a reasonable excuse to Trooper Barnes's failure to demand admission. Under that exception, "[a]nnouncement is not required when it is apparent from the surrounding circumstances that the authority and purpose of the police is already known to those within the premises." Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 6.2(e) (6th ed. vol. 3 2020). "In such a case, 'pausing at the threshold to make the ordinarily requisite announcement and demand would be a superfluous act which the law does not require.'" *Id.* (citation omitted); *see also State v. Coyle*, 621 P.2d 1256, 1261 (1980) ("[A] clear majority of courts, including the United States Supreme Court, [hold] that noncompliance may not be excused unless the police are 'virtually certain' the occupants are aware of their presence, identity, and purpose prior to their entry.").

Sorensen knew the troopers were there to arrest him and at his doorway, they then had to use the magic words to get permission to enter. But we cannot predict what might have been the course taken if Trooper Barnes had asked for entry to execute the arrest warrant. Sorensen, by all accounts, remained cooperative, so he may have precluded any entry by the troopers by simply leaving the home and going with them. In that scenario, no drug contraband would have been seen. Or he may have granted admittance, where in such case, once he moved to get clothing, Trooper Barnes was constitutionally authorized to follow and there, the resulting plain view exception to the warrantless search would be viable. *See State v. Tolsdorf*, 574 N.W.2d 290, 292 (Iowa 1998) (applying the rule to the search of a vehicle but discussing premises-search cases as well); *State v. Skola*, No. 00-1643, 2001 WL 1446979, at *2 (Iowa Ct. App. Nov. 16, 2001) (recognizing the cursory safety check exception). In the balancing of interests, the statute and our cases require that Sorensen have the chance to opt to leave the home with the troopers where he appears to be cooperating.

Finally, the State argued the evidence fit into the plain view exception; but the plain view doctrine only applies when the officer is "rightfully in the place that allows them to make the observation." *State v. McGrane*, 733 N.W.2d 671, 680 (Iowa 2007) (citation omitted). Moreover, if not in the home, Trooper Barnes would not have seen Sorensen move anything and so would have had no impetus to ask questions about it. *See State v. Watts*, 801 N.W.2d 845, 853 (Iowa 2011) ("The exclusionary rule requires the suppression of evidence discovered as a result of illegal government activity." (citation omitted)).

A search done without a warrant or an applicable exception is per se unreasonable. *State v. McMullen*, 940 N.W.2d 456, 460 (Iowa Ct. App. 2019). "The State has the burden of proving by a preponderance of the evidence that a warrantless search falls within one of the exceptions." *McGrane*, 733 N.W.2d at 676. Because the warrant was sought and granted based only on evidence discovered by a warrantless search that does not fit into an exception, that subsequent search warrant was invalid. *See Watts*, 801 N.W.2d at 853 ("To determine whether an improper entry invalidates a subsequent search pursuant to a warrant, we need to consider whether '"the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant."'" (citation omitted)). What we are left with is an unlawful search that then "taints all evidence obtained in the search or through leads uncovered by that search and bars it subsequent use." *State v. Naujoks*, 637 N.W.2d 101, 111 (Iowa 2001).

On our de novo review, we find Sorensen's motion to suppress should have been granted. With no additional evidence to support the charge, we reverse the district court's verdict and remand to dismiss the charges.

**III. Conclusion.**

Because officers did not comply with the statute and wrongfully entered Sorensen's home, the evidence they collected in their subsequent movement around the home and later search warrant should have been suppressed following Sorensen's motion. As such, we reverse the district court's ruling on the motion to

suppress and Sorensen's conviction; we remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**